IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| JEFFREY GRAY, Individually and as next best friend of and Personal Representative of the Estate of Jarrel Gray, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>RUDY TORRES, *et al.*,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>CIVIL NO.: WDQ-08-1380<br>*<br>*<br>*<br>* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Jeffrey Gray and Tanya Thomas, individually, and as the next best friends and personal representatives of the estate of Jarrel Gray, sued the Board of County Commissioners of Frederick County, Maryland (the "Board"), and Frederick County Sheriff Charles Jenkins and Deputy Sheriff Rudolph Torres, in their official and individual capacities for the death of Jarrel Gray.  Pending are the Defendants' motions for summary judgment and to bifurcate.  For the following reasons, the motion for summary judgment will be granted in part and denied in part, and the motion to bifurcate will be granted.

I.  Background

On November 18, 2007, Deputy Torres arrived at Gresham Court, Frederick, Maryland 21703, and saw Gray and two other men

1

fighting. *Def. Mot. Summ. J. Scott Report* at 4. Torres drew his taser and ordered the men to stop fighting, lie on the ground, and show their hands. *Id* at 4-5. Deputy Torres states that Gray turned toward him, yelled an expletive, and placed his hands in his pants. *Id.*, Torres Aff. One of the other men involved in the fight, Jerame D. Duvall, states that Gray never put his hands in his pants and attempted to comply with Deputy Torres's orders. *Id.* Duvall Dep. at 54. Torres then tased Gray. *Def. Mot. Summ. J. Duvall Dep.* at 54. Torres contends that Gray fell to the ground with his hands beneath his body and refused Torres's orders to show his hands. *Id.,* Torres. Aff. Duvall has testified that Gray fell with his hands by his side and was motionless and unresponsive. *Id.,* Duvall Dep. at 54.

Torres tased Gray again 23 seconds after he fell. *Id.,* Torres Aff. Another deputy handcuffed Gray. *Id.* The deputies noticed that Gray had stopped breathing, and an ambulance was called. *Id*. Gray was pronounced dead several hours later. *Id.,* Scott. Rep.

On May 28, 2008, the Plaintiffs sued the Defendants. The claims included: (1) survival and wrongful death against all Defendants (Counts I and II); (2) excessive force and police brutality against all Defendants (Count III); (3) assault and battery against Torres and the Board (Count IV); (4) negligent training and supervision against Jenkins and the Board (Count V);

2

(5) intentional infliction of emotional distress against Torres (Count VI); (6) violation of 42 U.S.C. § 1983 against Torres (Count VII); and (7) violations of Article 24 and 26 of the Maryland Declaration of Rights against Torres and the Board (Count VIII).

On August 12, 2008, this Court dismissed the claims against the Board, Sheriff Jenkins, and Deputy Torres in his official capacity. Paper No. 15. On December 10, 2008, this Court granted the Plaintiffs' motion for leave to file a second amended complaint alleging claims under 42 U.S.C. § 1983 against the Board and Sheriff Jenkins. Paper No. 38.

On December 15, 2008, the Defendants filed a renewed motion to bifurcate the claims against Deputy Torres from those against Sheriff Jenkins and the Board. On January 29, 2009, the Defendants moved for summary judgment.

II. Analysis

    A.   Summary Judgment

        1.   Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). The opposing party, however, must produce evidence upon which a reasonable factfinder could rely. *Celotex*, 477 U.S. at 324. A mere "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

    2.   42 U.S.C. § 1983

Count VII of the Second Amended Complaint alleges that Deputy Torres violated Gray's Fourth and Fifth Amendment rights under 42 U.S.C. § 1983. Sec. Am. Compl. ¶¶ 44-46.

Government officials performing discretionary functions are shielded from liability for civil damages under § 1983 when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity must be pled by the defendant official. *Id.* at 815. Once the official raises a qualified immunity defense, the burden shifts to the plaintiff to show that the official's conduct violated the law. *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993). The burden then shifts to the

4

defendant to demonstrate that the right was not clearly established at the time of the incident. *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007) (*citing Wilson v. Kittoe,* 337 F.3d 392, 397 (4th Cir. 2003)).

Clearly established rights include specifically adjudicated rights as well as those manifestly included within more general applications of the core constitutional principles involved. *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). There are three ways in which law becomes clearly established in Maryland: (1) an authoritative decision by the United States Supreme Court; (2) an authoritative decision by the Fourth Circuit Court of Appeals; or (3) an authoritative decision by the Court of Appeals of Maryland. *Id.* Decisions from other circuits or states are not authoritative for qualified immunity analysis. *Id.*

The Fourth Circuit has emphasized "the importance of resolving the question of qualified immunity at the summary judgment stage rather than at trial." *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003) (*citing Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)). *Wilson* recognizes, however, that "the qualified immunity question can. . . at times require factual determinations respecting disputed aspects of [a defendant's] conduct." *Id.* (*citing Pritchett*, 973 F.2d at 312). "The importance of summary judgment in qualified immunity cases does not mean. . . that summary judgment doctrine is to be skewed from

5

its ordinary operation to give substantive favor to the defense, important as may be its early establishment." *Id.* (*citing Pritchett*, 973 F.2d at 313.)

Qualified immunity analysis generally proceeds in two steps. The Court must decide whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)(*citing Saucier v. Katz*, 533 U.S. 194 (2001)). The Court must also decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Id.* at 818 (the district courts may exercise their sound discretion in deciding which prong of the qualified immunity analysis should be addressed first).

        a.    Were Gray's constitutional rights violated?

The Plaintiffs allege that Torres violated Gray's Fourth and Fifth Amendment rights by committing "an unreasonable seizure." Sec. Am. Compl. ¶ 45. When "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen," it invokes the protections of the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 394 (1989).

The Fourth Amendment prohibits unreasonable seizures. *Id.* The reasonableness inquiry in a Fourth Amendment excessive force is whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397

(*citing Scott v. United States*, 436 U.S. 128, 137-39 (1978)).

To determine whether Deputy Torres's use of force was reasonable, the Court weighs "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Turmon v. Jordon*, 405 F.3d 202, 208 (4th Cir. 2005) (*citing Graham*, 490 U.S. at 394).[1]  Deadly force is "justified only when a reasonable officer would have sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Clem v. Corbeau*, 284 F.3d 543, 550 (4th Cir. 2002).  Fourth Amendment reasonableness inquiries are fact-intensive. *Franklin v. Montgomery County*, DKC-05-0489, 2006 WL 2632298, *13 (D. Md. Sept 13, 2006).

Gray's conduct during his encounter with Deputy Torres is central to the question of whether Deputy Torres's actions were "reasonable under the circumstances." *Franklin*, 2006 WL 2632298

---

[1] The nature of the intrusion on the individual's Fourth Amendment rights is generally measured by (1) the amount of force employed to affect the seizure, and (2) the extent of the plaintiff's injuries. *Id.* (*citing Howerton v. Fletcher*, 213 F.3d 171, 173 (4th Cir. 2000), *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).  The governmental interests at stake are assessed by considering (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officer or others, and (3) whether he actively resisted arrest or attempted to evade arrest by flight. *Id.* (internal citations omitted).
    Applying these principles to Duvall's testimony, a reasonable jury could conclude that in the aftermath of a fistfight, deadly force was applied to a non-resisting, non-fleeing suspect who posed no risk to Deputy Torres.

7

at *13.[2]  There are conflicting accounts in this case.  Duvall has testified that Gray was attempting to comply with Deputy Torres's orders before he was first tased, and had his hands at his side when Deputy Torres tased him again.  Def. Mot. Summ. J. Duvall Dep. at 39-54.  Deputy Torres has stated that Gray was agitated, verbally hostile, refused to comply with his orders to lie down, and turned toward Torres and put his hands in his pants.  *Id.,* Torres Aff.  The parties appear to agree that Gray was unresponsive between the first and second tasings.  *Id.*

There is also a genuine issue of material fact whether the tasings were lethal.  Gray's autopsy examiner, Dr. James L. Locke, has testified that "based on our examination of Mr. Gray and various ancillary studies, we determined that his death was associated with the restraints that were used, that being the electronic control device or the taser, along with his alcohol intoxication."  Pl. Resp. Locke Dep. at 8.  The Plaintiffs cite Locke's testimony to assert that the tasings caused Gray's death, although the Defendants note that Locke wrote that it was unknown how Gray's injuries occured and stated in his deposition that there was likely a "temporal" relationship between the tasings and Gray's death, but not necessarily a causal relationship.

---

[2] In *Franklin*, the plaintiff alleged that police attacked and tasered him as he was attempting to comply with their orders; defendant police officers stated that plaintiff lunged at them and refused to allow himself to be handcuffed before he was tased.

Def. Mot. Summ. J. Autopsy Report; Def. Resp. Locke Dep. at 35.[3]

Viewed in the light most favorable to the Plaintiffs, Deputy Torres's first use of his taser was unreasonable.[4] Duvall has testified that Gray (1) did not have his hands in his pants, (2) was not acting in an aggressive manner, and (3) was attempting to lie down on the ground when he was tased. Def. Mot. Summ. J. Duvall Depo. at 38-42.[5]

---

[3] The Defendants also note that: (1) Judge Motz has previously characterized the taser as a "non-lethal device that immobilizes a suspect via an electro-muscular disruption," *Henry v. Purnell*, 428 F.Supp. 2d 393, 395; and (2) the U.S. Department of Justice taser guidelines "do not indicate that use of a taser in the ordinary case may result in a substantial risk of serious injury or death." U.S. Dept. of Justice, CONDUCTED ENERGY DEVICES: DEVELOPMENT OF STANDARDS FOR CONSISTENCY AND GUIDANCE, Nov. 2006.

[4] Because there is a genuine issue of material fact whether Deputy Torres' actions were reasonable, the Defendants' motion for summary judgment on the state law claims against Deputy Torres on the basis of law enforcement privilege to use reasonable force will be denied. *See* Def. Mot. at 52 (*citing Ladnier v. Murray*, 572 F.Supp. 544, 549 (D. Md. 1983), *rev'd on other grounds*, 769 F.2d 195 (4th Cir. 1985); *Brewer v. Mele*, 267 Md. 437, 444, 298 A.2d 156 (1972)).

[5] *See Franklin,* 2006 WL 2632298 at *12-13 (if the plaintiff was attempting to comply with police orders at the time he was tased, the tasing was unreasonable); *Orem v. Rephann,* 23 F.3d 442 (4th Cir. 2008) (police officer who twice tased a shackled but belligerent plaintiff used excessive force in violation of the Fourteenth Amendment); *Crihfield v. City of Danville Police Dept.,* 4:07CV00010, 2007 WL 3003279 (W.D. Va., Oct. 11, 2007) (police officers who tased the handcuffed plaintiff over a dozen times violated the plaintiff's Fourth Amendment rights); *compare Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001) (police officers had probable cause to believe plaintiff was armed and plaintiff's Fourth Amendment rights were not violated when police officers shot plaintiff after he reached into his back pocket as the officers ordered him to raise his hands and get on his knees); *Lowe v. Hoffman*, 2008 WL 3895599 (E.D. Va. Aug. 20, 2008)

9

The parties agree that Gray was unresponsive and motionless before being tased a second time. *See* Def. Mot. Summ. J. at 8-9. Duvall has testified that Gray fell with his arms at his side rather than beneath his body, as Deputy Torres has stated. Def. Mot. Summ. J. Duvall Depo. at 54, Torres Interrog. at 5. If the jury believes Duvall, the second tasing was an unreasonable use of force. *See* Franklin, 2006 WL 2632298 at *12-13.

        b.    Was the constitutional right clearly established?

A constitutional right is clearly established "when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right."[6] The Defendants bear the burden of proof on whether the constitutional right was clearly established at the time Gray was tased.[7]

A plaintiff's right to be free from excessive force during a seizure is a clearly established right. *Franklin*, 2006 WL

---

(plaintiff's constitutional rights were not violated when a police officer tased him after he threatened the officer and attempted to flee from arrest).

[6] *Franklin*, 2000 WL 2632298 at *12 (citing Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 313 (4th Cir. 2006)). This determination is an objective one. *Id.* (citing Wilson v. Kittoe, 337 F.3d 392, 402 (4th Cir. 2003)). The Court must consider "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Id.* (citing Owens ex. re. Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004)).

[7] *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007) (*citing Wilson v. Kittoe,* 337 F.3d 392, 397 (4th Cir. 2003)).

10

2632298 at *13 (*citing Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)).  Although, "the Fourth Circuit has not ruled on the specific circumstances under which it is reasonable for officers to use tasers[,]" *Lowe*, 2008 WL 3895599 at *4 n.4, a person who is attempting to comply with a police officer's commands--as Duvall's testimony attests--suffers excessive force if he is tased.[8]  If Gray was attempting to comply with Deputy Torres's orders before the first tase and was motionless and unresponsive with his hands by his side after the first tase, Deputy Torres would not be entitled to qualified immunity.

    3.   State Law Claims

The Defendants seek summary judgment on the state statutory, common law, and constitutional claims against Deputy Torres under Section Five of the Maryland Code Annotated, Courts and Judicial Proceedings Article.  Section 5-522(b) grants immunity to state officials for acts committed without malice or gross negligence and within the scope of the official's public duty.[9]  MD. CODE

---

[8] *Franklin*, 2006 WL 2632298 at *12; *see also* U.S. Dept. of Justice, CONDUCTED ENERGY DEVICES: DEVELOPMENT OF STANDARDS FOR CONSISTENCY AND GUIDANCE, Nov. 2006 (Conducted energy devices--including tasers-- should "only be used against persons who are actively resisting or exhibiting active aggression. . . CED's should not be used against a passive suspect").

[9] "Both malice and gross negligence are amorphous concepts." *Newell v. Runnels*, 407 Md. 578, 636, 967 A.2d 729, 763 (Md. 2009).  Malice is "behavior characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Id.* (*citing Barbre v. Pope*, 402 Md. 157, 182, 935 A.2d 699, 714 (Md. 2007) (internal citations omitted).

11

Ann., Courts and Judicial Procedure §5-522(b).  Deputy Torres is a state official.  Md. Code Ann., State Gov't § 101(a)(6); *Ritchie v. Donnelly*, 324 Md. 344, 597, A.2d 432 (1991); *Rucker v. Harford County*, 316 Md. 275, 558 A.2d 399 (1989).

As the Defendants note in their motion, the taser guidelines published by the U.S. Department of Justice state that tasers should not be used on "passive suspects."  U.S. Dept. of Justice, Conducted Energy Devices: Development of Standards for Consistency and Guidance, Nov. 2006.  In this case, Duvall's testimony would support an inference of gross negligence or malice by Deputy Torres.  *Barbre*, 402 Md. at 186.  The Defendants' motion for summary judgment on the state law claims will be denied.[10]

---

Malice is often "inferred from acts and circumstantial evidence. [It is] seldom admitted and need not be proven by direct evidence."  *Id.* at 407 Md. at 637, 967 A.2d at 763 *(citing Henderson v. Md. Nat'l Bank*, 278 Md. 514, 520, 336 A.2d 1, 5 (Md. 1976) (internal citations omitted).  Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. . ."  *Id.* (*citing Taylor v. Harford County Dep't Soc. Servs.*, 384 Md. 213, 229, 862 A.2d 1020, 1035 (2004) (internal citations omitted)).

[10] In *Barbre v. Pope*, the Court of Appeals of Maryland affirmed the lower court's decision to deny summary judgment for the defendant deputy sheriff because, "under the plaintiff's version of events, the deputy sheriff shot the plaintiff in the neck while the plaintiff had his hands raised in surrender;" thus "the plaintiff's version of events was sufficient to give rise to an inference of malice on the deputy sheriff's part."  *Id.* (*citing Barbre*, 402 Md. at 186, 935 A.2d at 717).  In *Okwa v. Harper*, the Court of Appeals similarly held that summary judgment was improper when the plaintiff alleged that a police officer "forcibly threw him on the ground and struck him in the head and neck."  *Id.*  (*citing Okwa*, 360 Md. 161, 757 A.2d 118 (Md. 2000)).

12

4.   Intentional Infliction of Emotional Distress

In addition to their assertion of state officer immunity on all of the Plaintiffs' state law claims, the Defendants move for summary judgment on the Plaintiffs' claim of intentional infliction of emotional distress, contending that the plaintiffs have not introduced evidence of intentional, reckless, extreme, or outrageous conduct causally linked to severe emotional distress.  Def. Mot. Summ. J. at 52 n.25.

A claim of intentional infliction of emotional distress requires proof of: (1) intentional or reckless conduct that is (2) extreme and outrageous and (3) causes (4) severe emotional distress.  *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367, 758 A.2d 95, 113 (Md. 2000).  Each element of the claim must be pled and proved with specificity.  *Id.*, *citing Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 175, 552 A.2d 947, 959, *cert. denied*, 316 Md. 364, 558 A.2d 1206 (1989).  This burden is high.  *Id.* (*citing Caldor, Inc. v. Bowden*, 330 Md. 632, 642-45, 625 A.2d 959, 963-65 (Md. 1993).  The Plaintiffs have not opposed the Defendants' motion for summary judgment on their claim of intentional infliction of emotional distress, *see* Pl. Resp.,  and have not introduced evidence of Gray's emotional distress.  *Manikhi*, 360 Md. at 367, 758 A.2d at 113.  The defendants will be granted summary judgment on this claim.

B.   Bifurcation

"The Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order bifurcation of . . . liability issues under Rule 42(b) of the Federal Rules of Civil Procedure." *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991).  Bifurcation is fact specific.  *Dawson v. Prince George's County*, 896 F. Supp. 537, 539 (D. Md. 1995).  The Court has broad discretion to bifurcate.  *Id.*  A trial may be bifurcated for convenience or in the interest of "expedition and economy."  *Id.*

The Plaintiffs have consented to the Defendants' motion to bifurcate the discovery and trial phases of the claims against Deputy Torres from the supervisor liability and failure to train claims against the Board and Sheriff Jenkins.  Papers No. 41, 48.

Supervisor liability exists only when a plaintiff establishes that an "active defendant violated his constitutional rights."[11]  *Marryshow*, 139 F.R.D. at 319.  Because Sheriff Jenkins and Frederick County are not alleged to have participated in Deputy Torres's in-field conduct, bifurcation will serve judicial economy and convenience.  The Defendants' motion to bifurcate will be granted.

---

[11] An "active defendant" is alleged to have committed violations of the plaintiff's constitutional rights. *Marryshow*, 139 F.R.D. at 318.  An "inactive defendant" may be liable for the actions of an active defendants because of failure to train, supervise, or investigate.  *Id.*

14

III. Conclusion

    For the reasons stated above, the Defendants' motion for summary judgment will be granted on the claim of intentional infliction of emotional distress but will denied as to all other claims, and the motion to bifurcate will be granted.


<u>July 17, 2009</u>                              <u>      /s/               </u>
Date                                        William D. Quarles, Jr.
                                           United States District Judge